Our next case is case number 419-0382, and it is entitled Aaberg v. Aaberg. We'll show the appellant is present by counsel, Mr. Vailley. Is that how you pronounce that? I'm sorry. Vailley. Okay. All right. Thank you, counsel. And then for the appellee, we have Mr. Swanson. You may proceed, Mr. Vailley. Thank you for the opportunity of having us down to argue a very rare and unusual issue with no guest for the committee. I remember I said... Oh, we see that all the time. Yeah. I've only had, this is the second case I ever had with it. May I digress and tell you a little bit about my first case, because it was rather unusual? It's your time. All right. Well, thank you. I was just a young sport out of law school, and I think it was about, I guess, 1968. And I had studied the rule against perpetuities with Professor Scholes and all the wills courses, and I thought I knew it all, heard it all in law school, but of course I didn't. Anyway, to make a long story short, I had this estate come in, and the mother was a nurse. She had died, but over the years, she had acquired a great deal of wealth through either hard work or inheritance. She had 11 children. And one of the daughters came in to me, and here again, I was just a sport out of law school, and she said, Mr. Bailey, she says, I hate my mother. I'm glad she's dead. I go, why in the world would you say that? Because we got a lot of money at stake here. And she said, we were just little children. And Saturday morning, she said, the hot water would start running, and she would line all 11 of us kids up in the wall and give us all enemas. I go, oh my god. Give them what? Enemas. Enemas. Enemas. And she says, I hate my mother. Well, it gets worse. She says, the next Saturday, she would get the hypodermic syringe out and give us all shots of vitamin E or D or whatever. But anyway, that was my first case with the rule against perpetuities. We won because the other lawyer apparently slept through his wills and the state's forces, and he didn't raise the issue of the rule against perpetuities. So we won. But this one's a little harder. Mr. Sorenson, he's a very good lawyer, and he has raised some good issues here. But let me get to the basic facts here. The facts are clear and undisputed. We have a land trust here that involves Lake Sentence. And the entire instrument simply says, upon the expiration date, the trustee may, in its discretion, extend the term. Now, Mr. Sorenson argued that violates the rule against perpetuities, and the trial court agreed with him. It should be noted that in this case, the land trust, I believe, came into existence in the year 2005. There are some key dates here in our history of the rule against perpetuities, and I think the big, big date here is 1969, Your Honors. And that's when the legislature enacted what I call the Savings Clause. And as I read this law, it appears that the legislature really had the intent of almost abolishing the rule against perpetuities. Because, counsel, you agree that absent the Savings Clause, the trust does violate the rule against perpetuities. Well, that's a good question. I'm not so sure. Here again, I woke up at 3 o'clock thinking about this this morning. But if you look at the first sentence in paragraph F, which precedes the offending sentence, allegedly, it says, The trust hereby created shall in no event last longer than 20 years from the date hereof. So it's almost like, if you read that, it's got a Savings Clause within the land trust itself. But I don't think it makes any difference. I think you're right. Arguably, it does. But then yet, it doesn't. Because if you look at the older case law, there's a 1907 Illinois Supreme Court decision that we've cited in our briefs. And it says, what we've argued all along here, it's Johnson v. Preston. It basically says, if the offending language can be severed, which it can in this case, all you have to do is take a magic marker and just draw through it. Then the trust is good. And I thought that was really a good rule, because back in 1907, Illinois Supreme Court was way ahead of its time in thinking about the rule against perpetuities. But then along came the case, and we cited this in our brief too, First National Bank of Joliet v. Hampton. And it says the same thing. It's a 1980 case. So it would be controlling, I think, here. It says the same thing. In other words, if the invalid portions can be disregarded, then those that are valid will be upheld. So when you read the statute itself, I think it says the same thing, that if there's any way we can construe the validity of the will of the trust, then we will do it under the savings statute. So that's our position here, that there was law ahead of the savings statute that allowed and would have saved the land trust in this case. However, then along came the Illinois Supreme Court, which we cited in our brief, Henry v. Estate of Feinberg. And that case, I think, really laid it out and said that the trust from being bad under the rule of misperpetuities. Now, I looked at it again this morning, and that case came up, I think, in the terms of, perhaps, racial discrimination. But yet the Illinois Supreme Court sidestepped and then went ahead and said, well, you know, under the savings statute, a trust is going to be good. It's going to terminate 21 years, and therefore, it would be valid. That was not a land trust case, though. That was not a land trust case. That's what kind of threw me a curve when I looked at it. I thought, well, this is pretty good stuff. But yet, your honor, I think it's probably, if the case goes next door, which is good or might, because these cases are so rare, I hope it gets published, I think it's kind of a telegraph preview of what they would do barring any change in the statute. Now, the other day I went out to the law library in Eureka. They have the old 1969 statutes, and I went up there and looked at the savings statute and copied it, and it's under a different numbering. We had a different numbering system back then, but I don't think the language of the savings statute has changed at all. In other words, I think it's the same as it is today. So, on this issue of perpetuities, I think that when you look at Feinberg, he may be a victim, but look at the statute and the cases that are older than the statute, that they say you can lock off this language and make the trust valid. So, on point number one, out of all respect, and I'm sure counsel's going to argue the problem's a decision, I think the trust is good. Moving on to point number two, counsel wants to partition the property. Here again, my understanding of Illinois law is that you can't partition a land trust. That's pretty much part of the law, and there are many cases that support that rule. However, I would concede, if you lose on point one, if the trust does violate the no-risk perpetuities, then you would probably have the right to partition. So, I think point two, your honors, depends greatly on point number one, what we do with that. So, that would be points one and two. Now, on the third issue, this is a little strange, too. We had a hearing in front of the trial court, but before that hearing, I filed a motion, I'm the second lawyer in this case, filed a motion to amend and correct our petition for fees. Under the arrangement, the plaintiff was supposed to reimburse my client his proportion of the fees in the maintenance and upkeep of the subject premises. However, that did not happen, so my prior counsel filed a petition for fees. I looked at it later and decided that we needed to go back further in years, because that initial petition did not cover all the years. I asked the trial court, please let me amend so that, you know, we can have one trial and catch all these fees at once. I think I have an ethical duty to correct fees. The trial court denied that, so we had a trial. How close to trial was that when you made that request, counsel? Pardon me?  It was close, I admit that. On the other hand... What's close? It's a few days, I think, or maybe a few weeks. But on the other hand, if you look at the case law, it says that amendments to pleadings are to be generous, and in fact, as I understand in the practice act, Your Honors, you can even amend your pleading after the evidence is in to conform to the proofs. So in this case, we had a trial, we won, but the judge only let us go back to, I believe, 2016. We didn't get to go back any further. I did make an offer of proof with records. But that's what had been alleged for a couple of years, but the litigation was pending. Just one. You can only go back to a certain date. So that would have, you would think, confounded your opponent, like, oh my goodness, now we've got to look at damages for three years prior to what we thought was the deadline. Well, he's a very intelligent man. He's probably better than I am to be a lawyer, but I mean, it didn't catch him by surprise. He knew we were running expenses. The only problem was we just wanted to go back to day one. I don't think he was caught by surprise by it. I mean, it wasn't something that that issue isn't as hard as the first issue of the rule was perpetuity. Now, if I had sprung that on him a day or two before hearing that, I'd say, wow. But in this case, it's just simply more expenses that the plaintiff had never paid, which raises another issue, clean hands. I don't even think, based on my look at the equity principles here, that the plaintiff should have been allowed to maintain his claim about the rule against perpetuities and his partition suit, simply because when you come into equity, you have to have clean hands. That's the basic law here. And the plaintiff, in this case, had paid little, if anything. In fact, the judge ordered him to pay $16,000, I think, within a short period of time. So here again, I believe that the plaintiff did not show good faith, did not have clean hands, and should not have been allowed to file this, however. It didn't come down that way. But I believe it was not a great surprise. It's kind of like trying a small claim scheme, meaning it's just a matter of pumping the bill. So opposing counsel should not have been able to rely on the pleadings that only requested that the court go back to 2016? Well, that's what I was trying to correct. In my opinion, the prior pleadings were inaccurate, and perhaps misleading. As an officer of the court, I had a duty, I think, to file a corrective motion to make it right. And I'm saying, I don't define it by great surprise. You mean it would have been a violation of your duty as a lawyer had you not made a motion to amend your pleading to benefit your clients? Well, that would be true. I think that's true. Because the court would somehow be aggrieved by the absence of a motion to amend? No, it would be maybe practicing fraud on the court. I don't want to do that. I'm too old to lose my license, so that's where we are. But in summary, then, this is a very nice case, very interesting. I hope that when you rule and you publish it, because there's a scant amount of cases on rule against perpetuities, and I thought about this last night. It's probably because a lawyer would have to work pretty hard right now, in view of the standing statute, to violate a rule against perpetuities. It would be very difficult. Thank you very much for hearing me and having me come down. I sure appreciate it. Thank you, counsel. Mr. Sorensen? Thank you. May it please the court and counsel, I'm Jeff Sorensen. I represent the plaintiff in this case, John Auberg. We are here today because Mr. Auberg was a beneficiary of a land trust created by his sister, and he was a co-beneficiary with his two brothers and his sister. His sister passed away, so after her passing, Mr. Auberg and his two brothers owned one-third interest each. After we filed our lawsuit, Jeff Auberg conveyed his interest in the property to his brother James, the defendant. So at that point, James owned a two-third interest, and my client, John, owned a one-third interest. And candidly, we're here today because my client doesn't want to share beneficial ownership of property with his brothers. That's what this is all about. We are clearly trying to get out from under this property and doing it the only way we know how. As Mr. Vealy said, we cannot terminate or partition a land trust. That's clear. So what we did was we believed that the land trust, because of Section I, that last sentence that Mr. Vealy identified, violated the rule against perpetuities. If Section I did not have that last sentence, and it had terminated at 20 years, it would have been fined. But it had that last sentence, the sentence that says, upon the expiration date, the trustee may, in its discretion, extend the term. That violates the rule against perpetuities, because there's nothing that governs the exercise of that discretion, and the land trust, in theory, could be a perpetual. If the trustee, land trustee, decided that they did not want to terminate the trust and sell the property at the end of the 20-year period. So that violated the rule against perpetuities. I don't know if Mr. Vealy acknowledged that to the court in his opening comments. Well, not quite. He says that you can remove or strike the portion of the land trust that violates the rule, and you're good to go. Until I heard him say that, that's not what I understood his briefs to mean. I didn't address that issue, per se. He did talk about some general case law that talks about ignoring ineffective provisions, but what the rule against perpetuities does is more than, it's not just a rule of construction, it just basically says, it's a rule of law, it says that this land trust agreement is void if it's violated. It is not something that says that you can ignore the provision that would violate the land trust agreement and enforce other provisions. You have to read the entirety of subsection I, and from that, it's clear that this is not a land trust that has a termination date, and it is perpetual. So again, I apologize. I really did not understand that to be the argument in the briefs, but if that's his argument today, I disagree that that's what those cases say. They don't say that. What about section 5 of the statute on statutes that he cited to the court, talking about that the rule of perpetuities against perpetuities has now been changed? That's the statute. You said, excuse me, Justice, you said the statute on statutes, I think you meant the statute concerning perpetuities. I did. I'm sorry. Thank you. I just want to make sure we're talking about the same section. I think if you look at that section, what that talks about are all the savings clauses that are applied to traditional intervitals trusts that don't apply to land trusts. As Mr. Vealey acknowledged, the statute in 1969 was essentially the same. The Robinson court decision was in 2008. The land trust agreements, there were two of them in the Robinson case. One was a 1989 land trust agreement. The second was a 1991 agreement. But the Robinson court said that because the second land trust did not have any sort of termination provision, when the parties rewrote it, they removed the termination provision that existed in the original one. It violated the rule against perpetuities. So in Robinson, they didn't apply Section 5, is that right? They did not apply Section 5. And so Section 5 talks about, with respect to trust, does it specifically exclude land trusts? It doesn't specifically exclude land trusts, but when you look at the types of trusts and the powers that are being exercised in Section 5, those are powers that are not exercised by a land trustee. They are powers regarding distributions of income and principal. They are powers that would be exercised by a fiduciary, who has a fiduciary duty to the beneficiaries of the trust. This is a land trust agreement, and Illinois law has recognized on multiple occasions that the obligation of the land trustee is much different from the obligation of the testamentary trust or an inter-bios trust. So why would the legislature want to have a savings clause regarding the rule against perpetuities for all trusts except land trusts? Why wouldn't a land trust need that same protection? There's a provision in the statute concerning perpetuities, and it's not addressed in the argument for today's argument, that concerns the right, whether the statute concerning the rule against perpetuities applies to a trust where the trustee, the beneficiary, has the right to sort of reclaim the trust assets, such as a land trust. And in this case, Aunt Auburn, still been alive, as the settler of the land trust, she could have recalled the assets and terminated the land trust. But after her passing, John Auburn and James Auburn did not have that right or that authority. So I think typically under another provision of the statute concerning perpetuities, a land trust agreement could simply not go in follow-up of the statute concerning perpetuities because the person who is the settler of the land trust would have the right to terminate the land trust at any time. But when that settler passed in this instance, and you have the siblings as the remaining beneficiaries, they didn't have that authority under the land trust agreement, at least not individually. They agreed collectively to terminate it, they could have done that. But land trusts are different animals, they're not testamentary devices, they're basically devices that are created for the purposes of having, I don't want to say secret ownership, to not make the ownership of a piece of land public property. And really that's the only reason they exist. Well, and to, I guess it's, I don't know if you'd call it fictional, but in a way convert from personal property to, excuse me, real property to personal property, which also then allows a transfer to be made of personal property without having to record something in the court's office, which again gets back to the secrecy, right? Correct, that's right. Okay, then I want to come back on something you said, which surprised me, shouldn't, because it's been a long time since I've looked at these land trusts, because when I said the rule against perpetuities comes up a lot, I was kidding. And land trusts doesn't come up a lot, and neither does the Clean Hands Doctrine, by the way, so maybe this ultimately should be an opinion but you said something like the set floor of the land trust has the right to do what? Well, a land trust trustee, a land trustee does not have the power of direction. Right, but you said the set floor, the person who creates the trust. Right. Okay, walk me through it. Well, if a person creates a land trust, there is a land trustee, typically it is a corporate land trustee, and maybe oftentimes you've seen Chicago Title and Trust, they agree, oftentimes it's someone like that, a corporate trustee. Okay, I've went through so far, try not to lose me from here on. But under a land trust agreement, the person who creates the land trust and is the beneficiary typically has the right to direct the land trustee to convey the property out of the land trust. Well, what happens to the beneficiaries if they are different than the set floor? Well, in this case, the beneficiary certainly, there are provisions in the land trust agreement that talk about the authority of the beneficiaries to direct the land trustee to act with respect to the property. The land trustee doesn't have any authority under this land trust agreement to act with respect to the property, except as directed by the beneficiaries. I don't think it's you. I'm pretty sure it's me. But it sounds like you're saying that the set floor can, I guess, rescind the land trust regardless of the rights or equitable interests, personal property interests of the beneficiaries. Is that what you're saying? In this instance, Your Honor, I'd have to limit my opinion to the facts of our case. What could have happened prior to Ann Hauger's death is entirely different than what can happen now after she's passed. Could she have terminated the land trust and conveyed the property out of the land trust to the detriment of her siblings who had beneficial ownership interests? I don't know the answer to that question. But regardless now, the beneficial owners of this land trust could, if they were in agreement. But if they're not in agreement, they can't. And they can't in this instance. If there was one beneficial owner, then that person could direct the land trust to be terminated. I don't know the answer to the question of, well, we have a majority owner, such as the authority to terminate it over the interests of the minority owner, the client, John Aubert. I don't know the answer to that question. I apologize to the court for that. But certainly, John Aubert doesn't have the authority to terminate on his own. His brother doesn't. We're here because they can't reach agreement. And we're trying to terminate the land trust. As Mr. Gidley acknowledged, once the land trust is terminated, then a long-term leasehold interest under the Pierce case can be partitioned. And this is a 121-year lease term from 2005 to, I believe, 2126. So the Pierce case, applying the Efficient Act, and talking about the interests that are subject to partition, determined in 1954 in the Illinois Supreme Court that a long-term leasehold interest in real property is subject to partition. And once the trial court terminated the land trust, we took the staff to the partition, and the court entered a judgment of partition. Well, the statute provides for automatic termination, does it not, of the land trust, so that the rule against perpetuities won't be violated. The savings? Yes. I'm talking about the savings statute. If the savings statute applies, then the land trust continues. We don't have the authority to terminate. And that's really the crucial issue, I think, in this case. Does the savings clause apply or not? Our position is that it doesn't. The Robinson case didn't apply it. The Feinberg case is not on point. The Feinberg case really involved an irrevocable trust and a provision. The question really was whether a provision in that trust that would disinherit, is the wrong word, but the beneficiary received nothing, had been married outside the Jewish faith. Is that against public policy? And the Feinberg court talked about the statute concerning perpetuities in connection with its discussion of Illinois statutes that reflect a public policy of testamentary freedom. Here, we don't have a testamentary request. We have a land trust. It's an entirely different animal. So I think Feinberg actually supports the conclusion that the statute concerning perpetuities in the savings clause doesn't apply to this land trust. If we were to determine that the trust is not in violation of the rule against perpetuities because of the statute, would that mean your petition suit could no longer fly? Yes, until the land trust terminates. So the last two issues that I'd like to address concern whether the trial court abused its discretion in denying the need to amend the counterclaim. If you go back, we laid this out in our brief, but if you go back and look at the counterclaim that was filed by James Aubert in November of 2016, it was a verified counterclaim and it states that the parties have paid to that point their fair share of the expenses for the maintenance and upkeep of the property. It was all forward-looking. So we got to the eve of trial and we had a motion for leave to amend the counterclaim file, which was prompted by my letter to Mr. Vealey when he sent out a notice of deposition to my client that I said to him in that letter, which is part of the record, that we're not going to agree that you can go back and ask John Aubert questions in his deposition that predate November of 2016, which is the effective date for the analysis. And in the motion for leave to amend, there's really no argument that's made at all by Mr. Vealey to warrant the court exercising its discretion in favor of the amendment of the counterclaim. As we stated in our response, it would be prejudicial. It would raise an enormous number of new issues, including we're going to go back to 2005. You know, there are statute of limitations issues. There are many new issues that would have been raised that we were not preparing to try at all. So Judge Foley, the trial court judge, is clearly appropriately exercising her discretion in denying the motion for leave to amend the counterclaim. The final issue that Mr. Vealey raised is the issue of unclean hands. And really, again, if you look back to November of 2016, his claim of unclean hands is that John Albert was not paying his fair share of expenses. But he was until November of 2016. The court held a hearing on that, heard evidence, entered a judgment. That judgment was satisfied. Why can't we go forward with the partition? There's really no authority cited for the proposition that my client's behavior is unclean hands. I think he's trying to go back and raise issues that predate the effective date of the counterclaim in which we did unethical things back in 2005, 2006. There's nothing in the record establishing that Mr. Albert, the plaintiff, did anything that was inequitable that would have prevented him from moving forward on his partitions. So for all of those reasons, we would ask that we would affirm the trial court judgments in all respects. If the court has no further questions, let me ask you to conclude with my comments. Thank you, counsel. Okay. Anything in the vote, Mr. Vealey? Just very briefly, if I may. I think on the latter point, my understanding of the law is that there was an that it holds that if you intend to recover on a breach of contract, cause of action, you yourself must please improve performance on your end. In this case, counsel, I would suggest that they didn't pay their end of the expenses. Therefore, I believe they lacked clean hands in this case. And also, I believe that you should have been able to go back. Like I said, it's basically a small claims case. It doesn't take a lot of time to approve unpaid bills. So I would respectfully disagree. The last point I want to make is if you look at the savings statute of the perpetuities that I brought the book, mainly 305-3 in the definition, little a for N, it says trust means any trust created by any written instrument, including, without limitation, trust created by the exercise of a power of appointment. So the way I read the savings statute, it's very, very broad, your honors. In other words, it doesn't say except in parentheses. This is a final interest. It doesn't say that. It says trust. So I think it was the intent of the legislature and the plain meaning of the statute that trust means any type of trust. And then if you look further in the same citation, 305-3, little c, it says instrument means any writing pursuant to which any legal or equitable interest in property or in the income therefrom is affected, disposed of, or created. So here again, I think it just really nails it in these definitions. And that being the case, I don't see how you can argue that a savings statute doesn't save this one sentence here. I mean, to me, it's so obvious. I thought this morning when I woke up, why am I going down here? But reasonable minds disagree, obviously. But I think, as I said a half an hour ago, my understanding is that the rule against perpetuity is basically about 99% gutted. This is probably the last case I'll ever try in my career, at the end of my legal career, that I'll ever try again on perpetuity simply because I think the savings statute and the rule against perpetuity is the last 500 years in common law. Thank you very much for having us down here. I appreciate it. Thank you, counsel. We'll take this matter under advisement and be in recess.